IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| LEIANAH M.M. KAHAHAWAI, | ) | CIV. NO. 22-00484 HG-WRP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| HAWAIIAN AIRLINES, INC.; | ) | |
| HAWAIIAN HOLDINGS, INC., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**ORDER GRANTING DEFENDANTS HAWAIIAN AIRLINES, INC. AND HAWAIIAN HOLDINGS, INC.'S MOTION FOR PARTIAL DISMISSAL FOR LACK OF SUBJECT-MATTER JURISDICTION (ECF No. 84)**

**AND**

**DECLINING SUPPLEMENTAL JURISDICTION OVER REMAINING STATE LAW CAUSE OF ACTION**

**AND**

**DISMISSING THE CASE**

Plaintiff Leianah M.M. Kahahawai was formerly employed as a flight attendant with Defendant Hawaiian Airlines, Inc.

In August 2021, Defendant Hawaiian Airlines, Inc. and its parent company, Defendant Hawaiian Holdings, Inc. ("Hawaiian Defendants") implemented a mandatory vaccination policy in the midst of the worldwide COVID-19 pandemic.

1

Plaintiff Kahahawai requested to be exempt from the COVID-19 vaccination policy based on unidentified religious beliefs.

The Hawaiian Defendants denied Plaintiff's request for exemption from their vaccination policy.

Plaintiff filed suit against the Hawaiian Defendants asserting:

**Count I:** Failure-to-Accommodate her religious beliefs pursuant to Title VII of the Civil Rights Act of 1964 and Hawaii Revised Statutes § 378-2; and

**Count II:** Gross Negligence.

The Hawaiian Defendants argue that the Court lacks subject-matter jurisdiction to review Plaintiff's failure-to-accommodate claims in Count I.

The Hawaiian Defendants assert that Plaintiff's failure-to-accommodate claims require interpretation of the existing Collective Bargaining Agreement that applied to Plaintiff as a flight attendant.  The Hawaiian Defendants argue that the Court may not review such claims pursuant to the jurisdictional limitations set forth in the Railway Labor Act, 45 U.S.C. §§ 181-188 ("RLA").  The RLA requires claims that involve interpretation of collective bargaining agreements for transportation workers to be resolved only through the RLA's internal dispute-resolution processes.  See 45 U.S.C. § 184.

Defendants' Motion for Partial Dismissal for Lack of

Subject-Matter Jurisdiction (ECF No. 84) is **GRANTED.**

Count I in the First Amended Complaint (ECF No. 34) is **DISMISSED WITH PREJUDICE.**

The Court lacks original subject-matter jurisdiction over the First Amended Complaint.

The Court declines to exercise supplemental jurisdiction over the remaining state law claim in Count II.

Count II in the First Amended Complaint (ECF No. 34) is **DISMISSED.**

## PROCEDURAL HISTORY

On November 10, 2022, Plaintiff filed the Complaint.  (ECF No. 1).

On February 21, 2023, the case was reassigned from Judge Jill Otake to Judge Helen Gillmor.  (ECF No. 20).

On June 16, 2023, Plaintiff filed the First Amended Complaint.  (ECF No. 34).

On April 2, 2025, Defendants submitted a letter to the Court, after conferring with Plaintiff's counsel, requesting leave to file a Motion to Dismiss pursuant to the Railway Labor Act, which was granted.  (ECF Nos. 81, 82).

On April 16, 2025, Defendants filed their Motion for Partial Dismissal for Lack of Jurisdiction Pursuant to the Railway Labor Act.  (ECF No. 84).

On April 29, 2025, Plaintiff filed a Motion For Extension of

Time To File Plaintiff's Opposition.  (ECF No. 88).

On the same date, the Court granted Plaintiff's Motion for Extension of Time to File Plaintiff's Opposition.  (ECF No. 89).

On May 14, 2025, Plaintiff filed her Opposition.  (ECF No. 96).

The Court elects to decide the Motion without a hearing pursuant to District of Hawaii Local Rule 7.1(c).

## BACKGROUND

Plaintiff Leianah M.M. Kahahawai alleges in the First Amended Complaint that she was a flight attendant employed by Defendant Hawaiian Airlines, Inc., since June 21, 2002, and was based out of Honolulu, Hawaii.  (First Amended Complaint at ¶ 30, ECF No. 34).

## Plaintiff's Collective Bargaining Agreement

Plaintiff Kahahawai was subject to a Collective Bargaining Agreement entitled, "Agreement Between Hawaiian Airlines, Inc. and the Flight Attendants in the Service of Hawaiian Airlines, Inc. as Represented by the Association of Flight Attendants-CWA." (Declaration of Justin Doane, Vice President of Labor Relations for Hawaiian Airlines, Inc., at ¶¶ 3-7, ("Doane Decl."), ECF No. 84-2; Collective Bargaining Agreement attached as Ex. 1 to Def.'s Motion, ECF No. 84-9).  The Collective Bargaining Agreement is

commonly referred to as the "CBA."  It was in effect from April 3, 2020 through April 2, 2025.  (Id.)

The Collective Bargaining Agreement governed the working relationship between flight attendants, including Plaintiff, and the Hawaiian Defendants.  (Doane Decl. at ¶ 8, ECF No. 84-2).  The CBA sets forth the terms and conditions of the flight attendants' employment.  (Id.)  The CBA provides detailed rules governing the performance of flight attendant duties including scheduling, route assignments, seniority, benefits, and retirement.  (Id. at ¶ 11).

The seniority and bidding provisions of the CBA cover all Hawaiian flight attendants' work assignment routes, schedules (including locations, dates, duration, and layovers), and aircraft types.  (Id. at ¶ 9; CBA at Section 8 on "Reserves," Section 9 on "Seniority," Section 10 on "Preparation, Bidding and Awarding of Flight Schedules Under PBS," and Section 11 on "Scheduling Policy," attached as Ex. 1 to Def.'s Motion, ECF No. 84-9).

Seniority and bidding procedures also affect work conditions, tasks, pay rates, and compensation.  (CBA at Section 3 on "Compensation," and Section 7 on "Hours of Service," attached as Ex. 1 to Def.'s Motion, ECF No. 84-9).

The Collective Bargaining Agreement contains a provision mandating that any disputes concerning interpretation or

application of any of the terms of the CBA be resolved through arbitration by the System Board of Adjustment whose decision is final and binding on the parties as provided by the Railway Labor Act, 45 U.S.C. § 151 et seq. (CBA at 1-15, attached as Ex. 1 to Def.'s Motion, ECF No. 84-9; Doane Decl. at ¶ 17, ECF No. 84-2).

**<u>The Hawaiian Defendants' Vaccination Policy</u>**

According to the First Amended Complaint, in August 2021, in the midst of the worldwide COVID-19 pandemic, Defendants Hawaiian Airlines, Inc. and its parent company Hawaiian Holdings, Inc. ("Hawaiian Defendants") announced a vaccination policy. (First Amended Complaint at ¶ 20, ECF No. 34). Plaintiff alleges that the Hawaiian Defendants required all of their employees to receive a COVID-19 vaccine or receive approval of exemptions for religious or medical reasons. (<u>Id.</u> at ¶¶ 20, 27-29). The First Amended Complaint asserts that the Hawaiian Defendants permitted unvaccinated employees to work under a Transition Period Testing Program from November 1, 2021 until January 4, 2022. (<u>Id.</u> at ¶ 20). Plaintiff asserts that she participated in the Transition Period Testing Program. (<u>Id.</u> at ¶¶ 33-34).

Plaintiff claims that after January 4, 2022, unvaccinated employees were offered 12 months of leave without pay when the Hawaiian Defendants ended the testing program as an accommodation. (<u>Id.</u> at ¶¶ 20, 22-23, 28-29).

6

## Plaintiff's Religious Accommodations Request For Exemption From The Vaccination Policy

Plaintiff alleges that on September 29, 2021, she submitted a request for exemption from the Hawaiian Defendants' vaccination policy based on religious beliefs. (Id. at ¶ 31).  Plaintiff requested that she be permitted to "work as normal without wearing a mask or being frequently tested." (Pl.'s Reply at p. 6, ECF No. 96).  Plaintiff does not identify her religious beliefs in the First Amended Complaint or the basis for the conflict.

The First Amended Complaint alleges that on December 14, 2021, the Hawaiian Defendants denied Plaintiff's request for religious exemption from the vaccine policy. (FAC at ¶ 32, ECF No. 34).

According to the First Amended Complaint, the Hawaiian Defendants ended the Transition Period Testing Program on December 22, 2021.  (Id. at ¶ 39).  Plaintiff asserts that on January 6, 2022, she declined the Hawaiian Defendants' proposed accommodation of leave without pay and they terminated her employment.  (Id. at ¶¶ 22, 40; Reply at p. 6, ECF No. 96).

## Plaintiff's Causes of Action

On June 16, 2023, Plaintiff filed the First Amended Complaint, asserting the following causes of action:

7

<u>**COUNT I:**</u>   Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., for **Religious Discrimination** Based On <u>**Failure-To-Accommodate**</u>

and

Violation of Hawaii Revised Statutes § 378-2, for **Religious Discrimination** Based on <u>**Failure-To-Accommodate**</u>

<u>**COUNT II:**</u> Gross Negligence.

## <u>The Hawaiian Defendants' Motion to Dismiss Pursuant To the Railway Labor Act</u>

The Hawaiian Defendants have filed a Motion for Partial Dismissal of Count I for lack of subject-matter jurisdiction.

The Hawaiian Defendants' Motion argues that the Court lacks subject-matter jurisdiction to review Plaintiff's failure-to-accommodate causes of action because such claims are precluded from court review pursuant to the Railroad Labor Act, 45 U.S.C. § 151, <u>et</u> <u>seq.</u>

## **<u>STANDARD OF REVIEW</u>**

A plaintiff has the burden of proving that subject-matter jurisdiction exists. <u>Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp.</u>, 594 F.2d 730, 733 (9th Cir. 1979). The Court must dismiss any claims for which it lacks subject-matter jurisdiction. <u>See</u> Fed. R. Civ. P. 12(b)(1); <u>Leeson v. Transamerica Disability Income Plan</u>, 671 F.3d 969, 975 (9th Cir.

2012).

A challenge to the Court's subject-matter jurisdiction may be "facial or factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, the party challenging jurisdiction argues that the allegations contained in a complaint are insufficient "on their face" to invoke federal jurisdiction. Id. A facial challenge therefore mirrors a traditional motion to dismiss analysis. The Court must take all allegations contained in the pleading "to be true and draw all reasonable inferences in [its] favor." Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004).

In a factual attack, the party challenging jurisdiction argues that the facts in the case, notwithstanding the allegations in the Complaint, divest the Court of subject-matter jurisdiction. See White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). No presumptive truthfulness attaches to the Complaint's allegations. Id. The party challenging jurisdiction presents "affidavits or other evidence properly brought before the court" indicating that subject-matter jurisdiction is lacking. Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). The burden then shifts to "the party opposing the motion [to] furnish affidavits or other evidence to satisfy its burden of establishing subject matter jurisdiction." Id. Failure to present suitable evidence establishing subject-matter

jurisdiction necessitates dismissal.  <u>Moore v. Maricopa Cnty.</u>
<u>Sheriff's Office</u>, 657 F.3d 890, 895 (9th Cir. 2011).

       A motion challenging the district court's jurisdiction
pursuant to the Railway Labor Act is properly considered as a
motion bringing a factual attack on subject-matter jurisdiction
pursuant to Fed. R. Civ. P. 12(b)(1).  <u>Soper v. United Airlines,</u>
<u>Inc.,</u> 2024 WL 4800082, *2 (C.D. Cal. Sept. 4, 2024).

       The Court may review the Collective Bargaining Agreement and
other relevant evidence to determine whether it has subject-
matter jurisdiction pursuant to the Railway Labor Act.  <u>Hinant v.</u>
<u>American Airlines, Inc.,</u> 2024 WL 4988391, *3 (D. Ariz. Dec. 5,
2024).

<u>**ANALYSIS**</u>

## I.   Defendants' Motion To Dismiss For Lack Of Subject-Matter Jurisdiction Is Timely

       As an initial matter, Plaintiff argues that Defendants'
Motion to Dismiss for Lack of Subject-Matter Jurisdiction
pursuant to the Railway Labor Act is "non-jurisdictional" and
that it "can be waived."  (Pl.'s Opp. at p. 9, ECF No. 96).

       The nature of subject-matter jurisdiction is set forth by
the United States Supreme Court in <u>Arbaugh v. Y&H Corp.</u>, 546 U.S.
500, 514 (2006).  Defenses based on lack of subject-matter
jurisdiction can be raised at any time, including after trial and
on appeal, and can never be waived or forfeited by the parties.

10

Id.

The Court is obligated to consider motions to dismiss for lack of subject-matter jurisdiction, including motions based on preclusion or preemption pursuant to the Railway Labor Act, whenever the issue is raised.  Pearson v. Northwest Airlines, Inc., 659 F.Supp.2d 1084, 1088 n.3 (C.D. Cal. 2009).  Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.  Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999).

Plaintiff's argument that lack of subject-matter jurisdiction can be waived by the Parties is wholly without merit.

## II.  The Railway Labor Act

The Railway Labor Act ("RLA"), 45 U.S.C. § 151, et seq., was enacted to provide a comprehensive framework for resolving labor disputes involving transportation carriers.

In 1936, the Railway Labor Act was extended to cover the airline industry.  Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 248 (1994); see 45 U.S.C. § 181.

The RLA addresses three kinds of labor disputes:

(1)  major disputes;

(2)  minor disputes; and

(3)  representation disputes.

11

Haralson v. United Airlines, Inc., 224 F.Supp.3d 928, 934 (N.D.
Cal. 2016).

First, "major disputes" relate to the formation of
collective bargaining agreements or the efforts of the parties to
secure rights under the collective bargaining process.  Consol.
Rail Corp. v. Ry. Labor Executives' Ass'n, 491 U.S. 299, 302
(1989).  Major disputes look to the acquisition of rights for the
future, and they do not involve disputes about rights that were
vested in the past.  Id.  Major disputes require the parties to
undergo lengthy bargaining, mediation, and arbitration processes.
Id.

Second, "minor disputes" seek to enforce existing
contractual rights as embodied in an existing collective
bargaining agreement.  Aircraft Serv. Int'l, Inc. v. Int'l Bhd.
of Teamsters, 779 F.3d 1069, 1081 (9th Cir. 2015) (en banc).
Minor disputes require the existence of a collective bargaining
agreement already in effect and involve "controversies over the
meaning of an existing collective bargaining agreement in a
particular fact situation."  Elgin, J. & E. Ry. Co. v. Burley,
325 U.S. 711, 723 (1945).

The RLA mandates that minor disputes are subject to an
exclusive dispute resolution mechanism for the prompt and orderly
settlement of such claims.  Norris, 512 U.S. at 252.

A distinguishing feature of a minor dispute from a major

12

dispute is that a minor dispute requires interpretation of an existing collective bargaining agreement whereas a major dispute challenges an attempt to form or secure collective bargaining rights. Id. at 265. Courts lack subject-matter jurisdiction to adjudicate minor disputes concerning an existing collective bargaining agreement. Id.

Third, the RLA also covers "representation disputes" which concern the definition of a particular bargaining unit and selection of the employee representative for collective bargaining. Herrera v. Command Sec. Corp., 837 F.3d 979, 989 (9th Cir. 2016). Representation disputes are within the exclusive jurisdiction of the National Mediation Board and courts also lack jurisdiction over such claims. Id.

## III. Courts Lack Subject-Matter Jurisdiction To Review Minor Disputes Pursuant To The Railway Labor Act

Minor disputes between an employee and a transportation carrier must be resolved through the RLA's non-judicial, procedural mechanisms rather than through a lawsuit. See 45 U.S.C. § 184. Courts lack subject-matter jurisdiction over minor disputes within the meaning of the RLA. Norris, 512 U.S. at 253.

### A.  Two-Step Test For Preclusion Of Minor Disputes

Courts in the Ninth Circuit apply a two-step test to evaluate if a plaintiff's claim is preempted or precluded from

13

court review by the RLA.  Columbia Exp. Terminal, LLC v. Int'l
Longshore & Warehouse Union, 23 F.4th 836, 841-42 (9th Cir.
2022).

First, the court examines if the plaintiff's claim seeks
purely to vindicate a right or duty created by the collective
bargaining agreement itself.  Id. at 843.  If so, the claim is
preempted or precluded from review.  If not, the court proceeds
to the second step.

Second, even if the claim does not seek to vindicate a right
created by the CBA, the court evaluates if the plaintiff's claim
is substantially dependant on analysis and interpretation of the
CBA.  Id.  If so, the claim is preempted or precluded from
review.

### B.    Plaintiff's Claims That Require Interpretation Of An Existing Collective Bargaining Agreement Are Preempted Or Precluded From Court Review Under The RLA

Under step two, a court is without subject-matter
jurisdiction to review a plaintiff's claim that concerns
interpretation of the "duties and rights created or defined by
the collective bargaining agreement."  Alaska Airlines, Inc. v.
Schurke, 898 F.3d 904, 919 (9th Cir. 2018) (en banc) (quoting
Norris, 512 U.S. at 258).  Such disputes must be resolved only
through the RLA mechanisms, and not by a court.  Id.

The RLA exclusivity provision was enacted to ensure that

14

disputes regarding existing collective bargaining agreements are governed by a uniform set of principles rather than conflicting substantive interpretations under competing legal systems in the federal and state courts.  Schurke, 898 F.3d at 919.

### C.    Disputes That Do Not Require Interpretation Of the Existing Collective Bargaining Agreement Are Not Preempted Or Precluded From Court Review

Consultation of the collective bargaining agreement alone is insufficient to trigger application of the RLA.  Livadas v. Bradshaw, 512 U.S. 107, 124 (1994).  In order to qualify as a minor dispute pursuant to the RLA, the dispute must require interpretation of the terms of a collective bargaining agreement. Norris, 512 U.S. at 265.

The court is not divested of jurisdiction pursuant to the RLA if there is no disagreement as to the meaning of all of the terms of the collective bargaining agreement.  Schurke, 898 F.3d at 927.  "Reliance on and reference to CBA-established or CBA-defined terms of employment do not make for a CBA dispute if there is no disagreement about the meaning or application of any relevant CBA-covered terms of employment."  Id.

For example, a claim for damages dependent on a CBA's undisputed wage provisions are not preempted by the RLA because the claim is not dependent on interpretation of a CBA term. Livadas, 512 U.S. at 125.

15

**IV.  Plaintiff's Failure-To-Accommodate Claims Require Interpretation Of The Existing Collective Bargaining Agreement**

The Hawaiian Defendants assert that Plaintiff's failure-to-accommodate claim pursuant to Title VII of the Civil Rights Act is precluded from review because it is a "minor dispute" about the terms of the existing collective bargaining agreement. Similarly, the Hawaiian Defendants assert that Plaintiff's failure-to-accommodate claim pursuant to Hawaii state law under Haw. Rev. Stat. § 378-2 is preempted by the RLA.[1]

The Hawaiian Defendants argue that Plaintiff's claims regarding the availability of accommodations from the vaccine policy require interpretation of various provisions of the existing CBA.

**A.  Plaintiff's Requested Accommodation Requires Interpretation Of The Seniority, Bidding, And Assignment Provisions Of The Collective Bargaining Agreement**

The United States Supreme Court ruled in <u>Trans World Airlines, Inc. v. Hardison</u>, 432 U.S. 63, 67 (1977), that it was

---

[1] Failure-to-accommodate claims on the basis of religion utilize the same standard and framework pursuant to both federal law under Title VII and Hawaii state law under Haw. Rev. Stat. § 378-2. <u>Cruz v. Kaiser Foundation Hospitals</u>,    F.Supp.3d   , 2025 WL 951099, *3-*4 (D. Haw. Mar. 28, 2025); <u>see</u> <u>Victorino v. Hawaiian Airlines, Inc.</u>, 2024 WL 5108276, *5 (D. Haw. Dec. 12, 2024).

an undue hardship to force an employer to violate an existing
collective bargaining agreement in order to provide an employee
with her requested accommodation.  See Groff v. DeJoy, 600 U.S.
447, 470 (2023) (clarifying that undue hardship requires more
than de minimis cost); 29 C.F.R. § 1605.2(e)(2) (stating that in
addition to cost, "Undue hardship would also be shown where a
variance from a bona fide seniority system is necessary in order
to accommodate an employee's religious practices when doing so
would deny another employee his or her job or shift preference
guaranteed by that system").

    The Hawaiian Defendants assert that granting Plaintiff's
requested accommodation to fly unvaccinated or to fly only on
specific routes would have forced it to violate the CBA's terms,
including its seniority system.  The Hawaiian Defendants cite
numerous provisions of the Collective Bargaining Agreement in
support of their position that Plaintiff's accommodation request
requires interpretation of the existing Collective Bargaining
Agreement.  The Hawaiian Defendants argue that accommodating
Plaintiff would have substantially disrupted not only its
business operations but would have violated numerous terms of the
existing CBA, including its seniority provisions, process bidding
for routes, and scheduling of flight attendants.  See Hardison,
432 U.S. at 79; 29 C.F.R. § 1605.2(e)(2).

    In October, November, and December 2021, Plaintiff Kahahwai

17

was a reserve flight attendant.  (Declaration of Colin Beard,
Director Flight Attendant Crew Planning for Hawaiian Airlines,
Inc., at ¶¶ 4-6, attached to Def.'s Motion, ECF No. 84-8).  A
reserve flight attendant is not awarded a particular route but is
available to be assigned to fly anywhere including in the
International Operation to Sydney, Austrialia.  (Id. at ¶ 6).

The Hawaiian Defendants assert that, according to their
interpretation of the CBA, the assignment of flights to a reserve
flight attendant is done in seniority order, taking into
consideration flight attendant preferences.  (Doane Decl. at ¶
16, attached to Def.'s Motion, ECF No. 84-2).

The Hawaiian Defendants assert that allowing Plaintiff to
fly unvaccinated, as Plaintiff requested, would have conflicted
with the seniority-based bidding process governing reserve flight
attendants set forth in the CBA.  (CBA at Section 9B-3 at p. 9-1,
attached as Ex. 1 to Def.'s Motion, ECF No. 84-9; Doane Decl. at
¶¶ 20-23, ECF No. 84-2).  The Hawaiian Defendants point to the
various provisions of the CBA governing seniority and route
bidding in support of their position.  (CBA at Section 8 on
"Reserves," Section 9 on "Seniority," Section 10 on "Preparation,
Bidding and Awarding of Flight Schedules Under PBS," and Section
11 on "Scheduling Policy," see also Section 3 on "Compensation,"
and Section 7 on "Hours of Service," attached as Ex. 1 to Def.'s
Motion, ECF No. 84-9).

18

The Hawaiian Defendants argue that complications in
assignments arose on the route from Honolulu to Sydney,
Australia, during the COVID-19 pandemic.  The Australian
Government in New South Wales, where Sydney is located,
implemented restrictions for unvaccinated flight crew arriving in
the jurisdiction.  (See Public Health (COVID-19 Air
Transportation Quarantine) Order (No 4) 2021, issued by the New
South Wales Government, attached as Ex. 11 to the Declaration of
Kathleen Mainerd, Senior Manager, South Pacific, Airport
Operations for Defendant Hawaiian Airlines, Inc., ECF No. 84-20).

The Australian restrictions included fines for employers
whose employees failed to follow protocols.  (Id.; Declaration of
Jon Baron, Director, In-Flight Policies, Procedures & Compliance
for Defendant Hawaiian Airlines, Inc., at ¶¶ 3-4, attached to
Def.'s Motion, ECF No. 84-5).

The Hawaiian Defendants assert that they elected to place
only vaccinated flight attendants on the route from Honolulu to
Sydney to avoid penalties and/or fines to unvaccinated employees
for violating the Australian regulations.  (Mainerd Declaration
at ¶¶ 3-5, attached to Def.'s Motion, ECF No. 84-4).

The Hawaiian Defendants explain that because Plaintiff was a
reserve flight attendant who flew international routes, including
to Sydney, Australia, accommodating Plaintiff's request would
have displaced the bids of other Hawaiian flight attendants and

impinged on their seniority rights in violation of the terms of the CBA.

Plaintiff disagrees with the Defendants' interpretation of the terms of the CBA.  Plaintiff relies on her own interpretation of the terms of the CBA to argue that granting her accommodation request and her schedule preferences would not have violated the CBA terms.

The question of whether Plaintiff's requested accommodation would have been permitted by the CBA is the exact type of dispute that the Court lacks subject-matter jurisdiction to review.  The dispute about whether the CBA would have allowed the Hawaiian Defendants to schedule unvaccinated flight attendants on the route to Sydney where the employees could have been subject to legal consequences and/or fines imposed by the Australian government is also unclear.

There is also a question pursuant to the terms of the CBA if the Hawaiian Defendants could have granted an accommodation to Plaintiff alone or whether they would have been required to provide the same accommodation to the other 268 flight attendants who requested exemption from the vaccine policy.  (Declaration of Willard Jackson, Senior Director, Leave Management for Defendant Hawaiian Airlines, Inc. at ¶ 10, attached to Def.'s Motion, ECF No. 84-3).  The disputed questions concerning seniority and the bidding process for other flight attendants are central to

Plaintiff's failure-to-accommodate claims.  The disputed question
of whether the CBA would have required the Hawaiian Defendants to
provide identical accommodations to all 268 flight attendants
requesting exemption is inextricably intertwined with the
Hawaiian Defendants' undue hardship defense.  These crucial
questions hinge on interpretation of the CBA's terms and must be
decided by an arbitrator.

Disagreements about the interpretation, scope, or
applicability of specific terms of an existing CBA are the types
of disputes subject to preclusion and preemption pursuant to the
RLA.  Hinant, 2024 WL 4988391, at *3 (citing Int'l Ass'n of Sheet
Metal Air, Rail, & Transp. Workers v. Union Pac. R.R. Co., 2019
WL 6499212 *10 (C.D. Cal. July 25, 2019); Pritchard v. American
Airlines, Inc., 708 F.Supp.3d 861, 867 (N.D. Tex. 2023)).

These disputes about the CBA are necessary to resolve
Plaintiff's failure-to-accommodate claims because they directly
impact the evaluation of the reasonable accommodations available
and the undue hardship defense.  Hardison, 432 U.S. at 79; 29
C.F.R. § 1605.2(e)(2).

### B.    Plaintiff's Claims Are Distinguishable From Intentional Discrimination Causes Of Action

Plaintiff primarily relies on cases that have ruled that
intentional discrimination causes of action are generally not
precluded or preempted by the RLA.  (Pl.'s Opp. at pp. 11-16, ECF

21

No. 96).

In <u>Felt v. Atchison, Topeka & Santa Fe Ry. Co.</u>, 60 F.3d
1416, 1420 (9th Cir. 1995), as a matter of first impression, the
Ninth Circuit Court of Appeals ruled that Title VII religious
discrimination claims are generally not precluded by the RLA
because these types of claims exist entirely independent of the
collective bargaining agreement and usually do not require
interpretation of CBA terms.  <u>See also</u> <u>Saridakis v. United
Airlines</u>, 166 F.3d 1272, 1277 (9th Cir. 1999) (finding federal
disability discrimination claim did not require interpretation of
CBA).

Here, Plaintiff's causes of action in Count I, however, are
not intentional discrimination claims.  Rather, Count I is
premised on Plaintiff's argument that she believes the Defendants
could have provided her with her requested accommodation within
the confines of the existing Collective Bargaining Agreement.
Plaintiff alleges that the Defendants denied her requested
accommodation and instead offered the accommodation of leave
without pay, which she claims was insufficient.  (First Amended
Complaint at ¶¶ 22, 28, 38, 47-52, ECF No. 34).  Plaintiff claims
that she elected to be terminated in lieu of the accommodation
proposed by the Defendants.  (<u>Id.</u> at ¶¶ 22-24, 28, 38, 40).

Plaintiff has not asserted any direct or intentional
discrimination claim, but instead has brought failure-to-

accommodate claims where she has placed the interpretation of
multiple provisions of the Collective Bargaining Agreement in
dispute.  See Sjoberg v. United Airlines, Inc., 2024 WL 4219736,
at *4 (S.D. Tex. Sept. 17, 2024) (quoting Pavlova v. United
Airlines, Inc., 2024 WL 1514962, at *3 (S.D. Tex. Mar. 5, 2024),
holding that the RLA bars court review of discrimination claims
where "Plaintiff puts interpretations of provisions of the
[collective bargaining agreement] at the center of this
dispute").

The same analysis applies to Plaintiff's Hawaii state law
failure-to-accommodate claim under Haw. Rev. Stat. § 378-2, which
is legally indistinguishable from her Title VII failure-to-
accommodate claim.  Victorino, 2024 WL 5108276, at *3.
Plaintiff's Haw. Rev. Stat. § 378-2 failure-to-accommodate claim
also requires interpretation of the terms of the existing CBA.
Contra Norris, 512 U.S. at 264-66 (holding that state law claims
that are independent of the collective bargaining agreement and
do not involve interpretation of the CBA's terms are not
preempted by the RLA).  Plaintiff's state law claim is preempted
pursuant to the RLA because it requires interpretation and
application of disputed terms in the CBA.  Edelman v. Western
Airlines, Inc., 892 F.2d 839, 845 (9th Cir. 1989) (finding state
law claims were preempted by the RLA because they were
"inextricably intertwined" with the interpretation of the CBA);

23

Alvarez v. Transitamerica Services, Inc., 2019 WL 144592, *4-*6
(N.D. Cal. Jan. 9, 2019).

The questions here concerning the availability of the
Plaintiff's requested accommodations based on disputed
interpretations of the seniority, bidding, reserves, and
scheduling provisions distinguish Plaintiff's causes of action
from Felt and Norris.

### C. Plaintiff's Failure-To-Accommodate Claims Require More Than Mere Reference To The Terms Of The Collective Bargaining Agreement

Courts have ruled that a plaintiff's claim is not precluded
or preempted by the RLA when the court need simply review a term
in a CBA or read the provisions of the CBA to determine its basic
provisions.  Burnside v. Kiewit Pac. Corp., 491 F.3d 1053, 1060
(9th Cir. 2007); Angeles v. U.S. Airways, Inc., 2013 WL 622032,
*6 (N.D. Cal. Feb. 19, 2013); but see McKinley v. Southwest
Airlines Co., 680 Fed. Appx. 522, 524-25 (9th Cir. 2017) (finding
rate of overtime pay required interpretation of the CBA because
plaintiff disputed the amount due under the terms of the CBA).

Here, Plaintiff's claims do not merely require the Court to
look to the CBA or reference its terms.  Instead, Plaintiff's
failure-to-accommodate claims require interpretation of the
complex collective bargaining agreement and various provisions
governing scheduling, bidding, and seniority for flight

24

attendants.  Plaintiff's failure-to-accommodate claims are "inextricably intertwined" with the CBA's terms.  <u>Edelman</u>, 892 F.2d at 845.

Plaintiff's interpretation of the CBA relies on her own beliefs as to available accommodations based on past practice, usage, and custom of the parties regarding the CBA.

In <u>Consol. Rail Corp. v. Ry. Lab. Executives' Ass'n</u>, 491 U.S. 299, 311 (1989), the United States Supreme Court ruled that interpretation of collective bargaining agreements often depends on practice, usage, and custom.  Interpretation of CBA terms based on practice, usage, and custom is one of the primary reasons that the RLA dictates that CBA interpretation must be before a specialized arbitrator and not the court system.

The United States Supreme Court ruled that these types of disputes cannot be reviewed by the courts because the RLA precludes review over claims where the parties disagree about the effect of past practices on the interpretation of CBA terms. <u>Consol. Rail Corp.</u> 49 U.S. at 320 (holding that the court lacked jurisdiction to review the employees' claims because there were disputes about the effect of the employer's past practices regarding drug testing and whether its drug testing practices were justified under the terms of the CBA).

Just as here, the RLA precludes review of Plaintiff's failure-to-accommodate claims given the disputes regarding the

effect that past practice, usage, and custom may have on the
terms of the existing CBA.  Id.; see also Hinant, 2024 WL
4988391, at *3; Flanary v. USAIR, Inc., 1997 WL 364090, *3 (S.D.
Cal. Mar. 27, 1997) (finding the flight attendant's claim was
preempted under the RLA because of questions about the effect of
practice, custom, and usage on the existing collective bargaining
agreement, even though no specific section of the CBA directly
addressed plaintiff's claim).

### D.    Plaintiff's Failure-To-Accommodate Claims In The Context Of The COVID-19 Pandemic

The Sixth Circuit Court of Appeals recently ruled, on very
similar facts, that a group of pilots' failure-to-accommodate
discrimination claims were precluded from court review pursuant
to the RLA.

In Odell v. Kalitta Air, LLC, 107 F.4th 523, 532 (6th Cir.
2024), the plaintiff pilots elected not to vaccinate for COVID-19
and requested exemptions from their employer air carrier's
mandatory vaccine requirement imposed during the global pandemic.
Id. at 531.  The plaintiff pilots proposed an accommodation of
limiting their flying routes to countries that did not impose
vaccine requirements.  Id.  The employer denied their requests
for exemption and accommodations.  Id.

The pilots sued their air carrier employer, asserting
various claims including Title VII and ADA claims for failure-to-

accommodate the unvaccinated pilots based on their religious beliefs and their alleged disabilities.

The district court ruled that the pilot's failure-to-accommodate claims were precluded from court review pursuant to the RLA.  Id.

On appeal, the Sixth Circuit Court of Appeals affirmed.  Id. at 531-32.  The Appellate Court ruled that the plaintiff's failure-to-accomodate claims required interpretations of the existing collective bargaining agreement, specifically with respect to seniority, bidding, and scheduling of the pilots' routes.  Id.  The Sixth Circuit Court of Appeals ruled that the courts lacked subject-matter jurisdiction over the pilots' failure-to-accommodate claims and that such claims were precluded from review pursuant to the RLA.  Id. at 531-32.

Here, Plaintiff requested that the Hawaiian Defendants allow her to fly unvaccinated, to continue testing, and to fly only on specified routes.  She argues that her requested accommodations would not violate the terms of the CBA and would not have interfered with seniority or bidding on the route to Sydney because she did not regularly fly international routes. Plaintiff does not dispute, however, that she was a reserve flight attendant who could have been assigned to international routes based on the complex bidding procedures set forth in the CBA.

27

Plaintiff's failure-to-accommodate claims require interpretation of the existing CBA with respect to seniority, bidding, and scheduling.  The question of what accommodations were available pursuant to the terms of the existing CBA in the midst of the COVID-19 pandemic is precluded from court review pursuant to the RLA.  Such claims require interpretation of existing terms in the collective bargaining agreement before an arbitrator.

Other District Courts have ruled that similar failure-to-accommodate claims against transportation carriers in the context of the COVID-19 pandemic are precluded from court review.  The District Courts have found that plaintiffs' failure-to-accommodate claims implicate CBA provisions regarding scheduling, bidding, routes, and compensation.  Such claims require interpretation of collective bargaining agreements for which the courts lack subject-matter jurisdiction.  Whitford v. Nat'l R.R. Passenger Corp., 2024 WL 4216050, at *6 (W.D.N.Y. Sept. 17, 2024); Grindling v. Cathay Pacific Airways, Ltd., 2024 WL 4164234, at *3 (N.D. Ill. Sept. 11, 2024); see also Saliba v. American Airlines, Inc., 2022 WL 4131485, at *5 (D. Ariz. Sept. 12, 2022).

The Court agrees with the reasoning in Odell, 107 F.4th at 532, Whitford, 2024 WL 4216050, at *6 , and Grindling, 2024 WL 4164234, at *3.  Plaintiff's failure-to-accommodate claims are

precluded and preempted from court review pursuant to the RLA.

**V.    Plaintiff's Request For Jurisdictional Discovery And For Leave To Amend The First Amended Complaint**

    **A.    Jurisdictional Discovery Is Not Warranted**

In Plaintiff's Opposition, she requests jurisdictional discovery for the first time, despite the discovery deadline being closed.  (Pl.'s Opp. at p. 18, ECF No. 96; see Second Amended Rule 16 Scheduling Order, ECF No. 75).

Plaintiff has not established good cause to amend the scheduling order to allow for additional discovery.  Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 608 (9th Cir. 1992) (explaining that good cause is required to amend the Rule 16 scheduling order).  Jurisdictional discovery is not warranted. Although the Court can evaluate evidence in a factual attack to subject-matter jurisdiction, the Court's evaluation is not one that requires the Court to resolve disputes concerning the interpretation of the existing Collective Bargaining Agreement. To the contrary, the Ninth Circuit Court of Appeals has explained that it is not for the courts to determine whether a claim actually violates a term of the collective bargaining agreement. The task of the Court is merely to determine if interpretation of the CBA is required to adjudicate Plaintiff's claim or whether a provision in a CBA arguably disposes of Plaintiff's claim. Schurke, 898 F.3d at 924.  It is not for the Court to decide if

Plaintiff's requested accommodation was reasonable or if the
Hawaiian Defendants would have faced undue hardship if they would
have provided Plaintiff with her requested accommodation.

There is no basis for jurisdictional discovery as it would
not alter the Court's finding that based on the allegations in
the Complaint and the Court's review of the existing CBA,
Plaintiff's failure-to-accommodate claims in Count I are
precluded from Court review and must be heard pursuant to the
dispute resolution terms in the RLA and the existing CBA.

### B.   Leave To Amend The Complaint Is Not Warranted

In Plaintiff's Opposition, she also requests leave to amend
the First Amended Complaint to add a claim for intentional
discrimination.  (Pl.'s Opp. at p. 19, ECF No. 96).

Plaintiff's request for leave to amend the First Amended
Complaint is untimely.  The original Complaint in this case was
filed two and a half years ago on November 10, 2022.  The First
Amended Complaint was filed nearly two years ago on June 16,
2023.  The deadline for seeking amendment to the Complaint closed
more than a year ago on March 28, 2024.  (ECF No. 36).  The Rule
16 Scheduling Order has been altered numerous times and Plaintiff
never sought to reopen the deadline to amend the Complaint.

Plaintiff characterizes Defendants' RLA Motion as "late"
(Pl.'s Opp. at p. 18, ECF No. 96), but defenses based on lack of

subject-matter jurisdiction, such as preclusion under the RLA, can be raised at any time and can never be waived or forfeited by the parties.  See Arbaugh, 546 U.S. at 514; Pearson, 659 F.Supp.2d at 1088 n.3.

Plaintiff has not established good cause required to amend the scheduling order to assert a new cause of action after more than two and a half years of litigation.  Johnson, 975 F.2d at 608 (explaining that a plaintiff must first establish good cause pursuant to Fed. R. Civ. P. 16(b) to amend the scheduling order prior to seeking amendment of a pleading pursuant to Fed. R. Civ. P. 15(a)).

**VI.  Plaintiff's Remaining State Law Claim**

A plaintiff has the burden of proving that subject-matter jurisdiction exists.  Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979).

Federal Rule of Civil Procedure 12(b)(1) requires that a case must be dismissed for lack of subject-matter jurisdiction when the Court lacks a constitutional or statutory basis to adjudicate the controversy.  Fed. R. Civ. P. 12(b)(1); Leeson v. Transamerica Disability Income Plan, 671 F.3d 969, 975 n.12 (9th Cir. 2012).

District Courts have a continuing duty to determine whether they have subject-matter jurisdiction.  Fed. R. Civ. P. 12(h)(3).

31

The Ninth Circuit Court of Appeals has held that a court may raise the question of subject matter jurisdiction, sua sponte, at any time during the pendency of the action.  <u>Snell v. Cleveland, Inc.</u>, 316 F.3d 822, 826 (9th Cir. 2002) (per curiam).

### A.    Federal Question Jurisdiction

There are no remaining federal questions in the First Amended Complaint.  Count I, which asserted a claim pursuant to Title VII of the Civil Rights Act of 1964, is the only federal question presented in the First Amended Complaint.

### B.    Diversity Jurisdiction

Diversity jurisdiction exists when there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a); <u>Caterpillar Inc. v. Lewis</u>, 519 U.S. 61, 68 (1996).

Plaintiff asserts that she "is, and was at all times relevant herein" a citizen of the State of Hawaii.  (First Amended Complaint at ¶ 3, ECF No. 34).

Defendants are also citizens of the State of Hawaii.  A corporation incorporated in one State and having its principal place of business in another is a citizen of both States.  <u>Bank of Calif. Nat'l Ass'n v. Twin Harbors Lumber Co.</u>, 465 F.2d 489, 491-92 (9th Cir. 1972).

32

The First Amended Complaint alleges that the Defendants Hawaiian Airlines, Inc. and Hawaiian Holdings, Inc. are citizens of both Delaware and Hawaii.  (First Amended Complaint at ¶¶ 4-5, ECF No. 30).

There is not complete diversity between the Parties.  The Court does not have subject-matter jurisdiction pursuant to diversity.

### C.    The Court Declines To Exercise Supplemental Jurisdiction Over The Remaining State Law Cause Of Action

Federal District Courts may have supplemental jurisdiction over related state law claims in a case over which it has original jurisdiction.  28 U.S.C. § 1367(a).  The district courts may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3).

The Ninth Circuit Court of Appeals has ruled that "when federal claims are dismissed before trial...pendent state claims should also be dismissed."  Religious Tech. Ctr. v. Wollersheim, 971 F.2d 364, 367-68 (9th Cir. 1992).

Here, the only remaining claim is Count II for Gross Negligence pursuant to Hawaii state law.

The Court declines to exercise supplemental jurisdiction over the remaining state law claim in Count II for Gross

Negligence. <u>Sanford v. MemberWorks, Inc.</u>, 625 F.3d 550, 561 (9th Cir. 2010); <u>James v. City & Cnty of Honolulu</u>, 125 F.Supp.3d 1080, 1098 (D. Haw. 2015) (declining supplemental jurisdiction over remaining state law claims considering factors of judicial economy, convenience, fairness, and comity).

Count II for Gross Negligence in the First Amended Complaint (ECF No. 34) is **DISMISSED.**

## CONCLUSION

Defendants' Motion for Partial Dismissal for Lack of Subject-Matter Jurisdiction (ECF No. 84) is **GRANTED.**

Plaintiff's request for jurisdictional discovery is **DENIED.**

Plaintiff's request for leave to amend the June 16, 2023 First Amended Complaint is **DENIED.**

Count I in the First Amended Complaint (ECF No. 34) is **DISMISSED WITH PREJUDICE.**

Count II in the First Amended Complaint (ECF No. 34) is **DISMISSED.**

//

//

//

//

//

//

The Clerk of Court is **ORDERED** to enter Judgment in favor of Defendants and to **CLOSE THE CASE.**

IT IS SO ORDERED.

DATED: June 6, 2025, Honolulu, Hawaii.



Helen Gillmor
United States District Judge

Leianah M.M. Kahahawai vs. Hawaiian Airlines, Inc.; Hawaiian Holdings, Inc., 22-cv-00484 HG-WRP; **ORDER GRANTING DEFENDANTS HAWAIIAN AIRLINES, INC. AND HAWAIIAN HOLDINGS, INC.'S MOTION FOR PARTIAL DISMISSAL FOR LACK OF SUBJECT-MATTER JURISDICTION (ECF No. 84) AND DECLINING SUPPLEMENTAL JURISDICTION OVER REMAINING STATE LAW CAUSE OF ACTION AND DISMISSING THE CASE**